[Civ. No. 17884. First Dist., Div. One. Jan. 29, 1959.]

LUCY M. MERRILL, Appellant, v. BRUCE R. MERRILL, Respondent.

424

Anthony E. O'Brien for Appellant.

Leigh Athearn and Ann L. Diamond for Respondent.

PETERS, P. J.—Plaintiff, Lucy M. Merrill, obtained an interlocutory decree of divorce from defendant on February 25, 1954. There was one child of the marriage, Bruce, then aged 7. The decree granted the parents joint custody of this child and divided his physical custody between them. Thus, defendant was awarded physical custody on alternate week ends, and on certain designated holidays. Defendant was also awarded physical custody during six weeks of the summer vacation. The plaintiff was awarded physical custody for all of the periods not specifically awarded to defendant. The final decree, embodying the terms of the interlocutory, was entered March 1, 1955.

In June of 1956 plaintiff noticed a motion to modify the decree so as to greatly limit the periods of custody that had been awarded to defendant, and in July, 1956, noticed a supplementary motion to further modify the decree by awarding the plaintiff full custody of the child and allowing the defendant certain limited visitation rights. Affidavits accompanied both notices, and, after some difficulties, defendant's deposition was taken. In November, 1956, after a two-day

hearing, the trial court modified the decree to provide that defendant was to see to it that during the periods the child was in his custody the child was to be sent to Sunday School. The modification also expressly provided that the plaintiff had the right to select the grammar school the child was to attend, and provided that both parents should permit the child to take readily movable toys from one residence to the other. The court also inserted a provision that each of the parties should keep the other informed of the whereabouts of the child during the long summer vacation, and that during the vacation periods each parent should have the reasonable right of visitation while the child was with the other parent. The six-week period awarded to defendant during summer vacations was divided into two three-week periods. In all other respects, the motions to modify were denied. The plaintiff appeals, contending that it was an abuse of discretion not to have granted her a more extensive modification.

The record shows that defendant is a practicing psychiatrist. He has been married three times, there being two children resulting from the first marriage, and Bruce was the sole issue of the second marriage to plaintiff. After the date the parties were divorced, both parents resided in Marin County. Defendant first rented a house in Sausalito. The household there consisted of a cook, defendant's then secretary whom he subsequently married, and occasionally the defendant's two children of the first marriage, and the secretary's mother. Since August of 1954 defendant has lived in Belvedere, where the cook and his secretary, who is now his wife, went to live with him. At both residences the defendant, his secretary and various house guests indulged, on occasion, in considerable drinking, sometimes in the presence of Bruce. But there was no evidence that defendant was ever intoxicated in the presence of the child; in fact, the evidence is to the contrary.

The plaintiff attempted to show immorality on the part of defendant by evidence that defendant had lived with his secretary before he married her. Defendant denied sharing his bedroom with his secretary until after they were married.

There was evidence that defendant did not take Bruce to church or to Sunday School while he had custody of the boy. Defendant testified that he did not think any religion should be forced on a child, but that young children should have religious training. This he tried to give to the boy by having

him watch a religious television program each Sunday. The defendant evidenced a willingness to abide by any order about Sunday School that might be made.

The defendant frankly admitted that, on several occasions, without the consent of the court or of the plaintiff, he had taken Bruce outside of the area permitted except with the consent of the court. During Easter vacation in 1955 he took the child to Los Angeles, and another time took the child to Phoenix without notifying plaintiff or the court. On several occasions he took Bruce to the Nevada side of Lake Tahoe, without court approval, to a spot the family had frequently visited before the divorce. He testified that he thought the decree permitted this. It did not.

On several occasions, after the interlocutory decree, the defendant consulted other psychiatrists about the boy, and, on three occasions, without telling plaintiff, took the boy to see psychiatrists. Although plaintiff testified that she did not think the child needed psychiatric care, she did admit that the divided custody arrangement "had just raised havoc with him." On one occasion when the psychiatrist involved, at the request of defendant, asked plaintiff for her consent to such an examination, she refused her consent. Defendant believed that the boy needed this care.

There is substantial evidence that, after the interlocutory, there was a good relationship between the defendant and his son. The defendant was frequently observed playing and working with, and reading to the child. There is also evidence that the relationship between defendant's new wife and the child was good.

The child has a health problem. Before the divorce he had contracted polio, and plaintiff testified that at the time of the hearing the child was still under a doctor's care for this condition, and was still taking therapy treatments. The defendant testified that he did not believe in stereotyped orthopedic exercise for the boy, because such treatment was apt to over-impress him with the idea that he was sick. For this reason, when Bruce was with his father, the defendant would advise spontaneous activities that would help to build up his shoulder muscles, such as boat rowing or paddling, or bag punching.

The plaintiff wife resided in Kentfield and there is no doubt that the child's relationship with his mother was a good one. The environment there was a happy one. The plaintiff testified as to several minor incidents concerning conduct on the part of defendant of which she complained, but these were

either reasonably explained by defendant or were so trivial that they did not show the defendant to be unfit to have custody. Plaintiff particularly complained that defendant purchased many expensive toys for the child which defendant would not allow the child to take to plaintiff's home in Kentfield. The trial court expressly provided in the order appealed from that the child should be permitted to take movable toys from one house to the other.

The most serious charges against defendant relate to his claimed excessive drinking and to his claimed relationship with his secretary prior to his marriage to her. So far as the drinking is concerned there was a direct conflict in the evidence. While defendant admitted drinking in front of the child, there is substantial evidence that defendant never became intoxicated in front of the child. On the issue of immorality, while there is evidence that defendant shared his bedroom with his secretary prior to the time they were married, defendant denied that he had done so. These conflicts were for the trial court.

 Appellant makes a vigorous attack on an evidentiary matter that appears to be of relatively minor importance. The plaintiff desired to introduce evidence that, prior to the interlocutory decree, defendant had submitted her, and his two other children by the prior marriage, to psychiatric examinations. It was the theory of plaintiff that in this fashion she could show a "pattern" or "phobia" on the part of defendant to submit members of his family to psychiatric examinations. Apparently, plaintiff believed that, if she could establish such fact, it would be relevant on the issue of defendant's competency to have custody of the child. The parties argue at length as to whether or not the problem was properly submitted to the trial court, and whether the court actually made a ruling on the issue. Although the matter is not entirely free from doubt, it may be assumed that the plaintiff proffered such testimony, and that the trial court ruled that it was inadmissible. The ruling, in our opinion, was not erroneous, but, even if it were, it certainly was not prejudicial.

It is difficult to see how the evidence was relevant. The problem before the court was whether the custody provisions in relation to Bruce should be modified. In deciding this question the court was required to consider the best interests of the child. Defendant testified that such care was required and plaintiff admitted that the child was disturbed. More-

over, it is the general rule of law that, before a trial court will modify a custody order, there must be evidence of a change in circumstances arising after the issuance of the decree sought to be modified. (*Foster* v. *Foster*, 8 Cal.2d 719 [68 P.2d 719]; see cases collected 16 Cal.Jur.2d 558, § 268.)
An obvious corollary of that rule is that evidence of either party of acts prior to the rendition of the challenged decree is inadmissible because irrelevant, since such evidence could not possibly show a change of conditions. (*Gantner* v. *Gantner*, 39 Cal.2d 272 [246 P.2d 923]; *Washburn* v. *Washburn*, 49 Cal.App.2d 581 [122 P.2d 96]; *In re Wood*, 103 Cal. App. 790 [285 P. 323].) Of course, there are exceptions to this rule, the major one being that evidence of acts unknown to the court or the complaining party at the time the challenged decree was entered, may be admissible. (*Olson* v. *Olson*, 95 Cal.App. 594 [272 P. 1113]; *Prouty* v. *Prouty*, 16 Cal.2d 190 [105 P.2d 295]; *Washburn* v. *Washburn*, 49 Cal.App.2d 581 [122 P.2d 96]; *Foster* v. *Foster*, 8 Cal.2d 719 [68 P.2d 719]; for cases from other jurisdictions discussing the problem see annotation in 9 A.L.R.2d 623.)
It should be noted that plaintiff at the time of the interlocutory, had actual knowledge of all of the facts about her husband's alleged "mania" for submitting members of his family to psychiatric examinations. Thus, the proffered evidence did not show any change in circumstances. The trial court permitted plaintiff to introduce evidence that, after the interlocutory, the defendant had submitted Bruce to several psychiatric examinations. Thus, no error was committed. (See *Prouty* v. *Prouty*, 16 Cal.2d 190 [105 P.2d 295], where a similar ruling of the trial court was upheld.) The trial court evidently believed defendant's testimony that such psychiatric examinations were necessary.
The other major contention of plaintiff is that the trial court abused its discretion in not modifying the interlocutory and final decrees so as to grant full custody to her and to limit defendant to visitation privileges. Of course "in every proceeding to modify a provision for the custody of a minor child the burden is on the moving party to satisfy the court that conditions have so changed as to justify the modification. All presumptions are in favor of the reasonableness of the decree, and in the absence of a showing that compels the conclusion that the decree should be modified, an appellate court cannot interfere with the trial court's refusal to modify it." (*Prouty* v. *Prouty*, 16 Cal.2d

190, 193 [105 P.2d 295] ; see cases collected 16 Cal.Jur.2d 563, § 270.)

In the instant case plaintiff has failed to sustain this burden. The claimed excessive drinking and immorality charges have already been discussed. As already pointed out, the evidence as to them was conflicting. The infractions of the interlocutory by defendant taking the child out of the state without consent were admitted by him. The trial court did not believe that these infractions were of such gravity as to warrant a modification. It was justified in this conclusion. The failure to take the child to Sunday School, and the refusal to allow the child to take toys from his house to that of plaintiff were explained by defendant, and the court modified the decree so as to prevent these problems from arising in the future. The other charges against defendant were either denied or explained by him, or were so trivial as not to warrant special mention. Thus, it is quite apparent that plaintiff has failed to show that the trial court abused its discretion in refusing to modify the basic terms of the decree.

The order appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.