GERALD M. SWINDLE *v.* VALERIE M. SWINDLE

5-4253                                           415 S. W. 2d 564

Opinion delivered June 5, 1967

*W. B. Howard* and *Jack Segars*, for appellant.

*Kirsch, Cathey & Brown*, for appellee.

GEORGE ROSE SMITH, Justice. This is a child custody case between an American-born father and an English-born mother. After protracted litigation a final hearing was held on December 29 and 30, 1966. This appeal is from the ensuing decree by which the chancellor denied the father's application for a change of custody and confirmed his original award of custody to the mother. The appellant's basic contention is that the chancellor erred in refusing to permit him to prove events that occurred before November 3, 1965—the date of the last preceding hearing upon the issue of custody.

Gerald and Valerie Swindle were married in England in 1962. Their daughter Sharon was born in 1963. Upon their separation in Missouri in 1964 Mrs. Swindle returned to England with her daughter. On May 28, 1965, Gerald obtained a divorce in Greene county, Arkansas. The decree awarded Sharon's custody to Valerie, apparently without contest.

In August of 1965 Gerald went to England, took forcible possession of his daughter, and brought her back to America by air. On August 9 he obtained a temporary order awarding him custody, pending a hearing on the merits. Mrs. Swindle was not financially able to come to Arkansas to defend the case, but she received

what amounted to charitable contributions, which enabled her to make the trip.

Discovery depositions were taken at Paragould, in Greene county, on October 27, 1965, in preparation for a hearing scheduled for November 1. Gerald was present with his three attorneys, Bill Penix, John Watkins, and Jack Hoskins. Valerie Swindle was present with her attorney, Maurice Cathey.

After the depositions had been taken Penix indicated to his client that he feared that Gerald was going to lose his case. Gerald at once secretly took Sharon and went to California with his present wife, Carole, whom he married on the way on November 4. The couple concealed their whereabouts until Valerie, with the aid of private detectives, discovered them in St. Louis in December, 1966. In a habeas corpus proceeding in Missouri the court awarded temporary custody to Valerie's attorney, Cathey, pending a decision on the merits in Arkansas. Earlier in 1966 we had held that the order awarding temporary custody to Gerald was not void. *Swindle v. Bradley,* 240 Ark. 903, 403 S.W. 2d 63.

After Gerald's flight from Arkansas the scheduled hearing was duly held on November 1, 1965. Two of Gerald's lawyers, Penix and Watkins, were present, but they were evidently embarrassed by their client's contemptuous evasion of the court's jurisdiction. At the chancellor's direction, however, they participated in the hearing. The matter was adjourned to November 3, to give Gerald an opportunity to appear, but he failed to do so. The court canceled its August 9 temporary order and directed that custody be restored to Valerie.

At the December, 1966, hearing, now before us for review, Gerald's present attorneys offered to prove, by his testimony and Valerie's, that Valerie had given birth to an illegitimate child on June 30, 1965, that she had been guilty of illicit relations with other men in England, and that her home there was not a suitable place for

Sharon. The chancellor refused to permit proof of occurrences before November 3, 1965. (We should add, for the guidance of trial judges, that the chancellor's refusal to permit counsel to make their offer of proof by actually questioning the witnesses, and his requirement that counsel instead state what they expected the witnesses to testify, cannot be recommended as the best procedure. It leaves the record uncertain about what the witnesses would actually have said. The better procedure is to permit counsel to elicit answers from the witnesses. If the trial judge conscientiously feels that he should not hear the witnesses' answers, the offer of proof may be taken down by the reporter in the judge's absence.)

Counsel for the appellant now argue that, since the welfare of the child is of primary importance, the court should—regardless of the ordinary rules of procedure— have allowed them to prove Valerie's misconduct, even though it occurred before the November 3 hearing. Our cases do not go that far. Although the best interest of the child is the controlling point at issue, it does not follow that all procedural rules are to be thrown overboard. Specifically, we have held that when a parent fails to produce evidence available to him at one hearing, he cannot rely upon that evidence in a later effort to win a change of custody. *Riley* v. *Vest,* 235 Ark. 192, 357 S. W. 2d 497 (1962) ; *Henkell* v. *Henkell,* 224 Ark. 366, 273 S. W. 2d 402 (1954).

Those cases govern this one for either of two reasons. First, the preponderance of the proof convinces us that Gerald's attorneys of record properly appeared in his behalf on November 1 and 3, 1965; so he is bound by that adjudication. Secondly, even if that were not so, he cannot evade the binding force of a hearing, which was conducted at his own request, by deliberately leaving the state.

When the testimony is so limited our choice is not difficult, as the appellant seems to concede. We could not conscientiously declare that either Gerald or Valerie is

the ideal custodian for their daughter, but we must choose between the two. During the fourteen months preceding the hearing below, Gerald was guilty of marked cruelty in denying to Valerie even the barest information about her child's health and well-being. We can easily imagine the agony of a mother who knows almost nothing about her daughter for more than a year. Moreover, Carole, Gerald's second wife, wrote letters to Valerie that were so venomous as to shock the chancellor's conscience. Those letters were written in St. Louis, but by deception they were postmarked in California, in furtherance of Gerald and Carole's attempt to conceal their whereabouts. Again, in a bizarre proceeding in a California federal court, involving Sharon's custody, Gerald signed a pleading and an affidavit containing willfully and grossly false statements about Judge Bradley and Maurice Cathey. Finally, Gerald contemptuously flouted the jurisdiction of the court below. We are unwilling to say that Gerald and Carole are fit to bring up this child.

Valerie admits serious indiscretions, but we know of no case in our Reports in which a mother has so steadfastly and devotedly fought for her child in the face of comparable obstacles. There is not even a hint of misconduct on her part during the fourteen months preceding the hearing below. We can with some serenity of mind award Sharon's custody to Valerie. We could not make that assertion if our decision were otherwise.

Affirmed, with an immediate mandate to be issued as in *Payne v. Jones,* decided last Monday, 242 Ark. 686 415 S. W. 2d 57 (1967), without prejudice to the filing of a petition for rehearing. Our injunction of March 6, 1967, enjoining Valerie from taking Sharon out of the state, is dissolved.

Byrd, J., disqualified.