**Delores Jean SNEESBY, formerly Delores Jean Davis, Plaintiff and Appellee,**

v.

**Raymond Lee DAVIS, Defendant and Appellant.**

No. 13228.

Supreme Court of South Dakota.

Argued April 22, 1981.

Decided July 22, 1981.

---

Neil P. Beets, Belle Fourche, for plaintiff and appellee; Leroy Hill, Belle Fourche, on brief.

Richard A. Pluimer of Stephens, Quinn, Carr, Tschetter & Buckmaster, P.C., Belle Fourche, for defendant and appellant.

HENDERSON, Justice.

## ACTION

Raymond Lee Davis (father) appeals from an order of the trial court which modified a divorce decree granting Delores Jean Sneesby (mother) custody of the parties' minor child. We reverse.

## FACTS

The parties were divorced in April of 1978 after being married for approximately twenty-two years. Five children were born as issue of this marriage, only one of which, Jully, being of minor age at the time of this appeal. The divorce decree provided that the father have custody of both Jully and Wesly, the parties' two youngest children, who were then ages ten and seventeen, respectively.

Subsequent to two previous unsuccessful attempts to have the trial court modify the divorce decree by granting her custody of Jully, the mother filed an order to show cause on June 10, 1980. Consequently, a hearing was held on June 24, 1980, which was continued on August 15, 1980, whereat the trial court heard the testimony of the parties, Jully, and other pertinent witnesses. On August 29, 1980, the trial court modified the divorce decree and granted custody of Jully to the mother, subject to the father's visitation rights. This appeal ensued.

## ISSUE

Did the trial court abuse its discretion by awarding custody of the parties' minor child to the mother? We hold that it did.

## DECISION

A trial court has broad discretion in awarding custody of minor children and this Court will not interfere with that discretion absent a clear case of abuse. *Engels v. Engels*, 297 N.W.2d 489 (S.D.1980); *Holforty v. Holforty*, 272 N.W.2d 810 (S.D.1978); *Pochop v. Pochop*, 89 S.D. 466, 233 N.W.2d 806 (1975). This exercise of discretion, however, must be supported by a sound and substantial basis in the record. *Haskell v.*

*Haskell,* 279 N.W.2d 903 (S.D.1979); *Masek v. Masek,* 89 S.D. 62, 228 N.W.2d 334 (1975).

█ SDCL 25–4–45 states that "[i]n an action for divorce the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." This Court has held:

> [T]he parent seeking modification of custodial rights has the burden of proving by a preponderance of the evidence that (1) there has been a substantial and material change of circumstances since the decree of divorce was entered, and (2) the welfare and best interests of the children require the modification being sought.

*Engels v. Engels,* 297 N.W.2d at 491, quoting from *Menning v. Menning,* 272 N.W.2d 828, 829–30 (S.D.1978). *See also* SDCL 30–27–19. The party seeking modification of a custody decree has the burden of proving both factors by a preponderance of the evidence. *Warder v. Warder,* 87 S.D. 133, 203 N.W.2d 531 (1973); *Huckfeldt v. Huckfeldt,* 82 S.D. 344, 146 N.W.2d 57 (1966).

In its order of modification, the trial court stated that a substantial and material change of circumstances has occurred since the implementation of the divorce decree. The trial court based its holding on the fact that, at the time of the divorce decree, all five of the parties' children were living with the father. By June of 1980, Jully was the only child remaining with the father; the other four children having left home. In any event, neither party contends that a substantial and material change of circumstances has not occurred since their divorce. The sole issue, then, is whether the mother met the required burden of proof to modify the decree regarding Jully's best interests. Obviously, if the record discloses that the mother failed to meet her burden, the trial court has abused its discretion. The trial court entered an order which was signed, attested, and filed. It had previously filed a memorandum decision.

"We are limited in our review to consideration of only those orders actually entered by the trial court. As we said in *Wall v. Wall,* S.D., 260 N.W.2d 644, 648:

> 'It is now settled in this state that the memorandum opinion is not material and is of no binding force and effect as a matter of law either upon the trial judge himself or anyone else. *Christiansen v. Strand,* 82 S.D. 416, 420, 147 N.W.2d 415, 417 (1966).' "

*Frisbee v. Dale,* 272 N.W.2d 806, 807 (S.D. 1978).

Prior to their divorce, the parties and their children made their home in Belle Fourche, South Dakota. The father continues to live and work in Belle Fourche while the mother has since moved to Sturgis, South Dakota. The mother remarried in the early part of 1978 and is employed as a police officer for the City of Sturgis. Jully has lived and attended school in Belle Fourche all her life.

The mother testified at the order to show cause hearing of August 1980 that she felt it was imperative that Jully be raised with a motherly influence, which she felt she could provide. Testimony by the mother also indicated that she thought that her influence would be in Jully's best interest. According to the mother, she was effectively prevented from exercising her visitation rights due to the father's indifference in making sure Jully was available on the designated visitation dates. When asked at the hearing what was her primary reason for seeking a change of custody, the mother replied: "I love my daughter, and I want her with me. I miss my daughter."

At the June 1980 order to show cause hearing, the father denied that he ever intended to deny the mother her visitation rights. The father testified that he would see to it that Jully spend the summer with her mother, as provided for in the original custody arrangement. Jully did, in fact, reside with her mother and step-father in Sturgis during the summer of 1980. The father also testified that he felt Jully's wishes with regard to her custody should be respected.

We now turn to the testimony of Jully, who was approximately two months shy of

thirteen years old at the time of the August 1980 hearing. Jully testified that her father suggested to her on more than one occasion that she telephone her mother, although he did not force Jully to visit her mother. During her most recent summer visitation with her mother, Jully testified that she felt uncomfortable at her mother's home. When queried with regard to possibly discussing female adolescent problems with her mother, Jully replied that she felt uncomfortable discussing such things with her mother due to the lack of a "full relationship" between the two. It was also brought out at the August 1980 hearing that, in a letter written to her father's trial counsel during the summer of 1980, Jully referred to her mother as a "bitch." The thrust of Jully's testimony is epitomized by her following statement: "Well, I think that I should stay with my dad because I want to. This is where my home and friends are. And I think mom is entitled to visitation. And this time I would keep to [th]em."

Skyler Clapp, a family counselor employed by the Belle Fourche school system, visited with Jully and her father at their home several times prior to the commencement of this action. Clapp testified that the father's home was always clean and pleasant. After testifying that the presence of a maternal influence would obviously be desirable for Jully, Clapp stated that Jully's father provides her with a certain amount of mothering, as does Jully's peer group. Clapp further stated that, if Jully ever felt comfortable enough to seek guidance or support from her mother, the fact that Jully lived with her father would not necessarily preclude her from obtaining such an influence. The homes of Jully's parents are approximately twenty-five miles apart. If the mother was awarded custody, Clapp believed that Jully's resulting resentment toward the change "would provide a huge stumbling block for her to overcome in working out a relationship with her mother[.]" Clapp also testified that he felt a change of custody would cause Jully to become depressed and withdrawn. Furthermore, Clapp testified that, in his opin-

ion, Jully and her father have an excellent relationship with one another and custody of Jully should remain with her father in Belle Fourche, although the mother should be allowed to develop a closer relationship with Jully through the exercise of her visitation rights.

We also note that, according to Belle Fourche school principal Jean Claire Dahlinger, Jully's academic performance has actually improved since her parents' divorce. Ms. Dahlinger testified that Jully's appearance was always that of a neat and attractive young lady, and that Jully had no record of excessive absences. A fair appraisal of the record discloses that Jully has thrived under the supervision of her father.

It appears from a review of the record that the trial court, after determining that a substantial and material change of circumstances had occurred since the implementation of the divorce decree, viewed the situation de novo in determining Jully's best interests. In this approach, the trial court erred. As we held in *Masek v. Masek*, 90 S.D. 1, 6, 237 N.W.2d 432, 434 (1976), the trial court's approach erroneously shifted the burden of proof from the mother to the father:

Starting with the proposition that the parties cannot relitigate the correctness of the original custody disposition, as we must, we find that the plaintiff herein has failed to sustain the burden of proof falling upon her. In borderline cases, as this was, we recognize that the parent not having custody might be tempted to relitigate the custody issue in the hope that a change in the composition of the Supreme Court might change its opinion. But this would not be fair either to the parties or the children, and we will be especially vigilant to avoid rewarding persistence in this type of case.

The Supreme Court of Iowa reached a similar conclusion in *In Re Marriage of Brown*, Iowa, 247 N.W.2d 2, 4 (1976) (citations omitted) when it stated:

The applicant [for custody modification] has the burden of showing by a

preponderance of the evidence substantial and material changes in circumstances which make the modification expedient or necessary. It must appear a new custodial arrangement will better serve the child's well-being.

If we were determining custody for the first time, the evidence, no doubt, would justify an award to either parent; but that choice was made when the original decree was entered. [The applicant] must now show [the child's] long-range welfare will be better—not merely equally—served in his custody rather than [the mother's].

■ The rationales of *Masek* and *Brown* are especially applicable in the instant case, for the trial court noted at the conclusion of the August 1980 hearing that the facts of this situation do not unequivocally indicate which parent would be able to best serve Jully's best interests. After it reached its afresh viewpoint that the parties were on equal footing, the trial court apparently based its decision to award custody to the mother on the theory that Jully needed maternal guidance. This perceived need evidently stemmed from Jully's recent advent into puberty and the departure of her older sisters from their father's home in Belle Fourche. It cannot be reasonably argued that Jully's physiological state has not changed in the last two and one-half years. Indeed, the mother testified that Jully had developed into a "young lady." It appears from the testimony of both Jully and her mother that the relationship between them is not conducive to any beneficial guidance on the mother's part due to Jully's lack of receptiveness. Jully and her mother have had heated arguments; Jully testified that she could not be happy with her mother.

Jully's testimony explicitly indicates that she wishes to remain with her father and friends in Belle Fourche. Her self-imposed lack of availability with regard to her mother's attempts at visitation further bears this out. As such, we believe that from a practical standpoint it would be difficult, if not impossible, to have Jully reside with her mother.

Upon a review of the record, we believe that the trial court clearly abused its discretion in awarding custody of Jully to her mother. We stress the fact, however, that the mother is entitled to visitation rights as set forth in the parties' divorce decree. Accordingly, the father should not, by action or indifference, attempt to prevent Jully's mother from exercising these rights.

The order of the trial court is reversed and the mother's visitation rights provided for in the parties' divorce decree are restored.

DUNN, MORGAN and FOSHEIM, JJ., concur.

WOLLMAN, C. J., dissents.

WOLLMAN, Chief Justice (dissenting).

I have no quarrel with the general principles of law set forth in the majority opinion. Nor will I belabor the facts of the case, for I am satisfied from the record that the trial judge gave painstaking attention to each of the factors considered by the majority opinion. That the facts may not have indicated unequivocally the decision to be reached is hardly a measure by which to determine that the trial court erred, for how often do the facts speak univocally in a child custody dispute?

Likewise, I am satisfied from the record that the trial court did not shift the burden of proof from the mother to the father.

This case can best be summarized by repeating the statement made by the trial judge at the conclusion of the August 29, 1980, hearing to the effect that "I would say that in five and a half years, this is the toughest one I've ever had."

Whether I would have made the same decision as did the trial court, I do not know. Given the trial judge's opportunity to judge the credibility of the witnesses, however, I cannot say that he clearly abused his discretion in awarding custody of the child to appellee. With respect to the practicality of the order, it is enough for me that the trial judge considered a change of custody essential to the best in-

terests of the child. In this regard it is not without significance that the trial judge was of the opinion that "there has been a subtle, insidious campaign to alienate Jully from her mother." I would leave it to the trial court to determine the enforceability of its order.

I would affirm the order appealed from.