**Karie L. KOLB, Plaintiff and Appellant,**

v.

**Myron A. KOLB, Defendant and Appellee.**

**No. 13557.**

Supreme Court of South Dakota.

Considered on Briefs April 26, 1982.

Decided Sept. 15, 1982.

---

Thomas M. Tobin of Maynes, Tonner, Maynes & Tobin, Aberdeen, for plaintiff and appellant.

Julie M. Johnson of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for defendant and appellee.

FOSHEIM, Chief Justice.

Karie L. Kolb (appellant) and Myron A. Kolb (appellee) were divorced in December 1979. In September 1978, twin girls were born of their marriage. The divorce decree awarded appellant custody of the twins, subject to visitation rights by appellee pursuant to a separation and property agreement. This appeal is from an order which modified the divorce decree, switching custody to appellee. We affirm.

At the time of the divorce both parties were employed and resided in Aberdeen, South Dakota. In October of 1980, appellant moved to Texas with her boyfriend, leaving the children in Aberdeen with her mother. The following month appellant took the children to Mississippi, where she was then living. After about seven weeks, appellant moved the twins to her father's home in Florida where they remained without her until January 21, 1981. She then returned the children to Mississippi where they resided until March 1, 1981, when they all came back to Aberdeen. Appellant originally testified she planned to marry her boyfriend and have the children live with them, although his work involved frequent out-of-state moves. She later testified that her plans had changed and that she did not intend to marry, or to move out of Brown County.

When custody was changed, appellee was employed in the same position he held at the time of the divorce. Appellee testified that he intends to marry his girlfriend with whom he is living. Appellant's frequent moving the children rendered appellee's visitation privileges difficult to exercise and seems to have precipitated the motion to modify the divorce decree. Appellee's girlfriend testified that after she and appellee are married she wishes to assist in the care of the twins.

Appellant claims the evidence does not establish a substantial change of circumstances required to modify the divorce judgment.

■ SDCL 25–4–45 [1] allows a court to vacate or modify the custody provisions of the judgment. That statute predates statehood. Civil Code 1877, § 72; CL 1887, § 2583. A parent seeking modification of custodial rights, pursuant to SDCL 25–4–45, has the burden of proving by a preponderance of the evidence that (1) there has been a substantial and material change of circumstances since the divorce decree was entered and (2) the welfare and the best interests of the children require the modification being sought. Either factor by itself is not sufficient to justify a change of custody—both must be present. *Sneesby v. Davis,* 308 N.W.2d 565 (S.D. 1981); *Engels v. Engels,* 297 N.W.2d 489 (S.D. 1980); *Masek v. Masek,* 90 S.D. 1, 237 N.W.2d 432 (1976); *Huckfeldt v. Huckfeldt,* 82 S.D. 344, 146 N.W.2d 57 (1966). "The rule of 'changed circumstances' is not statutory, but a creature of judicial expediency. Its purpose is to protect the court, the parties, and the children from continuing vexatious litigation on questions of custody." *Huckfeldt, supra* at 59.

■ Our custody modification decisions generally do not distinguish between a judgment based on evidence and findings of parental fitness and child interests and a judgment which rests on a custody agreement or upon findings absent existing material custody evidence. It seems to be the consensus of these decisions that the parties cannot relitigate the correctness of the original custody disposition because an award of custody, regardless of its basis, is res judicata as to conditions existing when made. *Masek, supra; Hershey v. Hershey,* 85 S.D. 85, 177 N.W.2d 267 (1970); *Huckfeldt, supra; Wellnitz v. Wellnitz,* 71 S.D. 430, 25 N.W.2d 458 (1946). Conversely an agreement between divorced parents relating to the custody of their children does not preclude the court from modifying the decree as circumstances require, and we have adhered to the substantial change of circumstances principle even though the original custody order was based on a stipulation of the parties. *Hershey, supra; Moser v. Moser,* 82 S.D. 149, 143 N.W.2d 369 (1966); *Wright v. Stahl,* 73 S.D. 157, 39 N.W.2d 875 (1949).

In his dissent in *Masek, supra,* 237 N.W.2d at 435, Justice Wollman wrote:

Although the rule is based upon pragmatic, practical reasons, well expressed in the majority opinion herein and in the *Huckfeldt* case, it should be applied to aid trial courts in carrying out their statutory duty to provide for the best interests of the child, SDCL 30–27–19(1), and should not be allowed to create a mechanistic barrier to frustrate the performance of that duty.

Notwithstanding our continued proclamations of adherence, we have on occasion indicated that the rule is less than absolute. In *Wright, supra,* 39 N.W.2d at 876, we said, "[a] judgment or decree entered in a suit for divorce is res judicata *as to the questions put in issue or necessarily and properly involved and actually tried and determined in the suit.*" (emphasis added.) Implicit in that tempered expression is that questions of fact not put in issue, necessarily and properly involved, or actually tried and determined, are not res judicata.

In *Wallace v. Wallace,* 26 S.D. 229, 128 N.W. 143, 144 (1910) (cited with approval in *Wright, supra* ), we acknowledged that a custody decree is not res judicata when it is shown that "*some material facts are disclosed which were unknown at the time the decree was rendered, or could not have been ascertained with the use of reasonable diligence, and then only to the extent and in the respect warranted by such changes.*" (emphasis added). A specific application of this exception is found in *Anderson v. Anderson,* 85 S.D. 152, 179 N.W.2d 1 (1970), where a separation and property custody agreement was executed referring to four children. Findings of fact and conclusions of law were waived. A decree granted the husband a divorce for the fault of the moth-

1. SDCL 25–4–45 reads: In an action for divorce the court may, before or after judgment, give such direction for the custody, care, and educa- tion of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same.

er and approved the property settlement and custody agreement which gave the mother custody of the four minor children. However, the mother had given birth to a child, which was not the child of the defendant, approximately one month before the separation and property agreement was signed and the divorce heard. She concealed the pregnancy in her complaint and later in her answer to interrogatories. It was not clear whether the defendant knew of the pregnancy. In *Anderson,* we said:

> At the divorce with the plaintiff present and having signed a custody agreement which referred to only the four children of these parties, there exists in the birth of another child special circumstances which should permit the Court to go behind its previous determination in these custody matters. In *Miller v. Miller,* 15 Wis.2d 583, 113 N.W.2d 403, the Wisconsin Court, without discarding the rule of res adjudicata [sic], recognized that there exist special conditions which should permit a Court to go behind its previous determination in these custody matters.

*Id.* 179 N.W.2d at 2–3. The case was reversed and remanded. When it came back on appeal, in 86 S.D. 757, 201 N.W.2d 394, 396 (1972), we held that "the Court acted within its proper discretion and that there is sufficient competent evidence to support his action in changing custody."

In *Newsome v. Newsome,* 42 N.C. App. 416, 256 S.E.2d 849, 854–55 (1979) (emphasis in original), the North Carolina Supreme Court stated:

> The reason behind the often stated requirement that there must be a change of circumstances before a custody decree can be modified is to prevent *relitigation* of conduct and circumstances that antedate the prior custody order. It assumes, therefore, that such conduct has been litigated and that a court has entered a judgment based on that conduct. The rule prevents the dissatisfied party from presenting those circumstances to another court in the hopes that different conclusions will be drawn . . . .

When, however, as in the present case, facts pertinent to the custody issue were not disclosed to the court at the time the original custody decree was rendered, courts have held that a prior decree is not res judicata as to those facts not before the court. Thus, in *Stewart v. Stewart,* 86 Idaho 108, 383 P.2d 617 (1963), the Court stated that where facts affecting a child's welfare existed at the time of the entry of a custody decree but were not disclosed to the court, especially in default cases, these facts may be considered in a subsequent custody determination. *Accord, Boone v. Boone,* 150 F.2d 153 (1945); *Perez v. Hester,* 272 Ala. 564, 133 So.2d 199 (1961); *Henkell v. Henkell,* 224 Ark. 366, 273 S.W.2d 402 (1954); *Weatherall v. Weatherall,* 450 P.2d 497 (Okl. 1969). *See generally,* Annot., 9 A.L.R.2d 623 (1950).

Suppose, for instance, it should appear that, unknown to the first judge, the child had been regularly confined to a closet for long periods of time or otherwise abused but those facts are made known to the second judge. Surely it could not be said that the second judge is powerless to act merely because the circumstances are the same in that the abuse is no greater or the environment no worse than before. Moreover, evidence of the abusive environment that existed prior to the first hearing (but unknown to the judge who conducted that hearing) could properly be considered by the judge conducting the second hearing in deciding what disposition of the case would be in the best interest of the child.

While the above noted authorities involve facts unlike those before us they all relate to the concept of whether the doctrine of res judicata is invoked when the original custody disposition was made without all the facts. We believe that a factual absence occurs alike when the divorce decree, as in this case, rests solely on a separation agreement or when it is based on some facts, but devoid of other material facts then existing concerning the best interests of the children. Under either circumstance, evidence concerning child custody has not

been litigated and to that extent should not be deemed adjudicated in a subsequent modification hearing.

It is well recognized that the stress, animosities, and economic exigencies which frequently surround divorce proceedings may not provide a suitable setting for a child custody agreement based solely on the best interests of the children. Paramount may be an urgent desire by one or both parties to end the marriage or, as in *Harms v. Harms,* 323 Ill.App. 154, 55 N.E.2d 301 (1944), the parents may use custody as a means of bargaining over whether the application for divorce will be contested. A custody disposition resting on such synthetic moorings should not be permitted to frustrate a subsequent best interest review after the dust from the marital dissolution has at least somewhat settled. As is noted in Annot., 9 A.L.R.2d 623, 624 (1950):

> Opposing social interests must be balanced in determining to what extent an award of custody may be regarded as being subject to reopening for consideration of matters in existence but not considered in the original proceedings, the state being interested alike in safeguarding the welfare of the child, innocent victim of its parents' marital mishaps, and in insuring that litigation be conducted in an orderly manner to a definite conclusion.

> Under ordinary principles of res judicata, a judgment or decree, absent fraud, is conclusive between the parties, not only as to matters decided therein, but those which might have been properly decided. A bald application of these principles would seem, in the absence of fraud, to preclude a relitigation by either of the parents, parties to the divorce action in which custody was awarded, of matters which could have been presented to the court, and so to bar subsequent consideration of matters in existence at the time of the original proceeding even though not considered therein.

We now conclude that facts pertinent to child custody, which were not put in issue or involved, tried and determined by the court as a basis for the original divorce decree, are not res judicata as to the best interests of the children, as indicated in *Wright, supra,* and may be considered anew in a subsequent custody modification hearing free from the substantial change of circumstances constraints. The modification hearing then becomes the first meaningful opportunity for the trial court to fully hear and decide all unlitigated matters of custody. The record before us reveals no evidence offered at the time of the divorce concerning custody. The court adopted a separation agreement which was dictated into the record by counsel. Thus facts pertinent to child custody were not put in issue, involved, tried or determined by the court as a basis for the original divorce decree. The modification hearing, on the other hand, was an in-depth inquiry focusing directly on the best interests of the children. When the original decree is based on an agreement of the parties, the modification hearing should be free from the substantial change of circumstances constraints as this is the first meaningful opportunity for a trial court to fully hear and decide all unlitigated matters of custody. Consequently appellee was not required to prove change of circumstances affecting the welfare of the children. The trial court must be free in this type of case to consider and balance any adverse effect a custody modification may now have upon the children, regardless of the basis of the original disposition. This leads us to the discretion test.

SDCL 25-4-45 has been held to leave broad discretion in the trial court to determine which parent in a divorce action shall be given custody of their children and that decision will be reversed only for a clear abuse of discretion. *Sneesby, supra; Engels, supra; Huckfeldt, supra.* We cannot conclude the modification order here was a clear abuse of discretion.

The order of the trial court is affirmed.

WOLLMAN, DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part, dissenting in part).

I concur with that aspect of the majority decision which addresses the case on appeal. I dissent to all of the dicta therein contained creating new law in this state which shall, with its sweeping language, open the door wide to relitigation on the merits of child custody as to facts existing prior to the entry of a decree of divorce.

## THE CASE

As any reader will note, the decision is principally addressed to changing the decisional law of this state. Each party to this appeal briefed three identical issues. This Court, sua sponte, creates new law on an issue not briefed nor argued and which has a profound impact on the settled law of child custody in this state.

Essentially, the issues on appeal relate to the Findings of Fact and Conclusions of Law entered by the trial court and as to whether they are supported by the evidence; and lastly, whether there was a material and substantial change of circumstances, as well as the best interests of the children considered, which required a modification of the divorce decree. Any decision by this Court beyond these issues is, pure and simple, dicta. But the dicta is powerful and engulfs the holding of the case on the issues.

Under the two-fold test set forth in *Sneesby v. Davis* and *Engels v. Engels,* cited in the majority, the trial court rightfully placed the twin daughters with the father. Thirteen findings of fact and six conclusions of law were entered after both parties presented testimony, affidavits, and oral argument. A fair reading of the record and formal decision of the trial court reflects that the trial court hinged its decision on the irresponsibility of the mother and her failure to maintain a stable home for the twins. The father's environment and employment record were more stable; the mother was employed when the divorce decree was entered but unemployed when these proceedings occurred and was being supported by a male friend with whom she was living. Evidence was introduced that a child neglect report had been made to the South Dakota Department of Social Services for failure of the mother to pick up the twins from a babysitter. Thereupon, said Department took the twins to St. Luke's Hospital in Aberdeen as one child was running a fever and developed an ear infection. The trial court indicated that the physical facilities of the father in Aberdeen and the presence of two grandmothers in Aberdeen provided a more suitable situation for the twins than to have them living in a small trailer in construction camps. A material and substantive change of circumstances was found. Equating options for the twins' best interests, the trial court opted for custody in the father. In my specially concurring opinion in *Spaulding v. Spaulding,* 278 N.W.2d 639, 642 (S.D. 1979), I expressed that the "[f]ather and mother must be compared as to who could provide the better educational, moral, physical, emotional, temporal, and mental benefits." It is my opinion that the trial court was compelled to use a comparison when it reposed custody in the father of the two contending parents, for Conclusion of Law II declares: "That both the Plaintiff and Defendant are fit and proper persons for the custody of the two minor children of this marriage."

We can, in this case, use settled law and oft-approved principles in this state to decide this case. Instead, by dicta, we reverse previous law and certainly modify well-established cases. Lest this case be washed ashore in a tidal wave of dicta, I wish to express my legal reasons as to why I would affirm the trial court.

First of all, I stand behind the two-prong test set forth in *Sneesby* and *Engels.* These are very recent pronouncements from this Court. I believed in them in 1980 and 1981 and I believe in them now. Secondly, it appears that the father, who sought the modification, met the burden of proving the two requirements set forth in *Sneesby* and *Engels.* And this he did by a preponderance of the evidence. *Warder v. Warder,* 87 S.D. 133, 203 N.W.2d 531 (1973); *Huckfeldt v. Huckfeldt,* 82 S.D. 344, 146 N.W.2d

57 (1966). Third, a trial court has broad discretion in awarding custody of minor children and this Court will not interfere with that discretion absent a clear case of abuse. *Holforty v. Holforty,* 272 N.W.2d 810 (S.D. 1978). In exercising this discretion, the trial court must be supported by a sound and substantial basis in the record. *Haskell v. Haskell,* 279 N.W.2d 903 (S.D. 1979). As demonstrated by the present circumstances of the father and mother, it appears that the trial court did have a sound and substantial basis for its decision in the record. We have honored this discretion principle based upon the trial court's opportunity to observe the demeanor of the parties and witnesses and judge their credibility. Yet, this Court has not hesitated in its appellate duty to conscientiously review the record to determine if, indeed, a trial judge was not supportable in his conclusions based upon the submitted evidence. *Hines v. Hines,* 78 S.D. 464, 104 N.W.2d 375 (1960). As I expressed in my dissent in *Herrboldt v. Herrboldt,* 303 N.W.2d 571 (S.D. 1981), "Were appellate review treated superficially or the decisions of trial courts simply rubber-stamped, great divergencies in practice and variations in results would arise between these courts of first impression, which would effectively nullify the concept of 'equal justice for all.'" *Id.* at 573. This Court filed an opinion as recent as August 18, 1982, reversing a child custody award in *Haak v. Haak,* 323 N.W.2d 128 (S.D.1982), based upon an abuse of discretion. Given the precedent of this Court and state of the record, I join in the majority opinion for there was no clear abuse of discretion.

## THE DICTA

If the majority opinion's theoretical stance (all by way of dicta) was sound, this case is not the proper vehicle to embark upon a new judicial journey. The facts in this case which involve modification of a divorce decree entered on December 11, 1979, do not in any way pertain to facts prior to the decree. Rather, the evidence submitted to the trial court all pertained to facts subsequent to the decree. Counsel for both parties restricted their evidentiary showing to circumstances of the parties after the decree was entered. Based upon this evidence, the trial court entered findings of fact and conclusions of law determining there was a substantial and material change of circumstances after the divorce decree was entered. This Court's review is limited to the trial court's findings of fact and conclusions of law. *O'Connor v. O'Connor,* 307 N.W.2d 132 (S.D. 1981); *Connelly v. Sherwood,* 268 N.W.2d 140 (S.D. 1978). It is the findings of fact which are to be considered on appeal. *Wall v. Wall,* 260 N.W.2d 644 (S.D. 1977). I repeat: the three briefed issues pertain to findings of fact, conclusions of law, and evidence. Consequently, this Court should not indulge in holdings which do not address issues posed at the trial court level or in the briefs.

Addressing the merits of a sweeping decisional law change (all dicta), I see no reason for expressing a departure from our past decisions when one reviews the history of this case. If facts, issues, and briefs are presented which fairly and fully raise the issue created in the dicta, this Court could, meritoriously and with judicial analysis, adjudicate thereupon. There are absolutely no "special conditions" in this case as quoted in *Anderson* in the majority. Not once does the trial court or the briefs touch upon evidence or findings or issues pertaining to "special conditions." In *Anderson,* findings of fact and conclusions of law were waived. In the case at bar, the case came on for trial on November 19, 1979, both parties being represented by counsel and personally present. Thereupon, in open court, evidence was adduced and a property settlement agreement was dictated in the record. The trial judge, based upon the proceedings and the stipulation, entered findings of fact and conclusions of law on December 11, 1979. They were extensive, well drafted, thorough, well thought out, and dealt in great detail with the custody of the children, the visitation thereof, child support, and fitness of the parties. What great danger, then, in this *Kolb* case, are we guarding against? Would we destroy the art of advocacy with a new holding? Are not

parties to a lawsuit entitled to make decisions as to whom shall be their lawyers and to repose confidence in them? Do not trial judges have education, experience, and wisdom to draw upon? Are not parties entitled to some discretion (and particularly here, where it was thoughtfully done) as to whom shall have custody? Gentlemen of the Bar and Bench, this *Kolb* case was tried, determined, and litigated. Thus, the language in *Wright,* cited in the majority opinion, is inapposite. Hence, to superimpose a new rule in this state, like a bolt out of the blue, is improper. Furthermore, the *Newsome* case cited in the majority is inapplicable here. Here, there is no evidence that "facts pertinent to the custody issue were not disclosed." I agree with the majority's statement "While the above noted authorities involve facts unlike those before us * * *." It is at this point that the majority opinion begins a flawed leap in analysis. The point is: that *the facts were before the trial court when this decree was entered.* There is, therefore, no "synthetic mooring."

Let us, for sake of academics, disregard this *Kolb* case and continue our stroll through the world of dicta and follow it through to its decisional impact. Do we, with this new rule, improve our lot in these child modification cases? I think not, for the language in the majority opinion is too broad, too all encompassing. Certainly, I would not favor a relitigation on the merits of child custody based upon stress, animosities, and economic exigencies. (Ordinarily, these conditions produce a divorce in the first instance.) As regards conditions which were or could have and should have been brought to the attention of any trial court at the previous custody hearing or trial, I would not allow these to be urged or relied upon as a material change in circumstances to obtain modification. *See Brim v. Struthers,* 44 Wash.2d 833, 271 P.2d 441 (1954). Counsel and litigants owe a duty to come forward. One bite of the apple is enough. Litigants should not be permitted to sleep on the facts. Courts have their doors open to litigate on divorce and custody matters. They should not permit relitigation at the whim of litigants. Litigation must have some repose. But if fraud were perpetrated on the trial court or duress used upon one of the parties in a child custody agreement, I would sanction going behind the decree of divorce. I also approve of the rule that the decree would preclude consideration of prior misconduct. *See Swindle v. Swindle,* 242 Ark. 790, 415 S.W.2d 564 (1967); *Merrill v. Merrill,* 167 Cal.App.2d 423, 334 P.2d 583 (1959); *Carney v. Franklin,* 207 Ga. 39, 59 S.E.2d 909 (1950); *Baker v. Baker,* 119 Utah 37, 224 P.2d 192 (1950).

I do not wish to see the trial courts in this state inundated with contested child custody modification hearings springing from this opinion. An agreement of the parties is not always shallow, synthetic, meaningless, fraudulent, made under duress, or "unlitigated." More often than not, these child custody agreements are prepared within the confines of a superb adversarial system and scrutinized carefully by an able trial judge. In closing, I am fearful we are adopting a rule which will foster litigation in an already overburdened judicial system and a rule which has a lesser value than the rule announced in *Hershey v. Hershey,*\* cited in the majority opinion, and *Application of Heintz,* 78 S.D. 188, 99 N.W.2d 794 (1959). With too wide a brush, does the majority paint. Robert Ruark once wrote a great

---

\* In *Hershey,* 85 S.D. at 90, 177 N.W.2d at 270, citing five previous South Dakota Supreme Court cases, we expressly stated:

> It has long been the rule in this jurisdiction that the doctrine of res judicata applies to that part of a divorce decree giving direction for the custody and care of the children of the marriage and that the jurisdiction of the court cannot be invoked to inquire into the same or other facts existing at the time or prior to the former decree.

\*   \*   \*   \*   \*   \*

We further recognized "that in some jurisdictions a court's determination based upon an agreement as to custody is not res judicata and the rule of changed conditions does not apply" and renounced that line of authority. *Id.* Accord, *Anderson v. Anderson,* 118 N.E.2d 214 (Ohio App. 1954).

novel called "Something of Value." His theme came from a proverb of the Basuto African Tribe: "If a man does away with his traditional way of living and throws away his good customs, he had better first make certain he has something of value to replace them." When we cast aside precedent, this is a pretty good yardstick.