**Steven Michael PRIBBENOW,
Plaintiff and Appellee,**

v.

**Jodene Anita VAN SAMBEEK,
Defendant and Appellant.**

Nos. 15735, 15742.

Supreme Court of South Dakota.

Considered on Briefs Nov. 19, 1987.

Decided Jan. 27, 1988.

William E. Coester, Milbank, for plaintiff and appellee.

Leo P. Flynn, Milbank, for defendant and appellant.

MILLER, Justice.

This is an appeal from an order awarding a father custody of and support for a minor child born out of wedlock. We affirm.

## FACTS

Dana Michael Van Sambeek (Dana) was born on November 9, 1985. His mother is appellant Jodene Van Sambeek (mother) and his father is appellee Steven Michael Pribbenow (father). Mother and father are not now and have never been married.

Shortly after mother became aware of the fact that she was pregnant, she began deliberating as to what to do. Father was informed of the pregnancy and immediately offered moral support. Mother and father discussed their options regarding the birth of the child. Father felt there were three options: (1) get married, (2) mother keep child with father providing support and having visitation rights, or (3) father keep child. Mother felt that the child should be placed for adoption to a two-parent home.

Shortly after Dana's birth, father learned that mother had entered into an agreement with Catholic Family Services (CFS), which granted CFS the temporary care and custody of Dana for purposes of placing the child with a suitable couple for adoption. Armed with this knowledge, father commenced a paternity action to establish his paternity and to gain custody of Dana. Mother answered the complaint, admitted that father was the natural father and generally alleged that father had no experience, facilities, genuine desire, religious background, or financial resources with which to raise Dana. Mother did not seek custody for herself but rather requested that Dana remain with CFS and ultimately be placed for adoption.

A hearing was held on September 19, 1986,[1] at which time the court ruled from the bench awarding custody of Dana to father, with visitation rights in mother. The day after this hearing, mother changed her mind and on November 29, 1986, she filed a separate action and made a motion for change of custody alleging a material change of circumstances. The court joined the two cases and, after a hearing on December 17, 1986, entered its order, supported by findings of fact and conclusions of law, which awarded custody of Dana to father, allowed visitation by mother, and further ordered that mother pay child support in the amount of $210 per month. Mother now appeals the court's order regarding the custody, visitation, and support of Dana.

## ISSUE I

WHETHER THE MOTHER OF AN ILLEGITIMATE MINOR CHILD HAS THE ABSOLUTE RIGHT TO THE CHILD'S CUSTODY.

Mother claims that SDCL 25–5–10 gives her the absolute right to the custody of Dana. SDCL 25–5–10 provides:

The mother of an illegitimate unmarried minor is entitled to its custody, services, and earnings. In an action for the determination of paternity, the court may award custody of the child to either parent, considering the best interests of the

---

1. At this hearing, Dana was represented by an attorney (who had been appointed by the trial court as guardian ad litem) who actively participated in the examination of witnesses.

child as to its temporal, mental and moral welfare.

■ First, we note that the best interests and welfare of the child is always the court's primary concern. *Garnos v. Garnos*, 376 N.W.2d 571 (S.D.1985); *Hanks v. Hanks*, 296 N.W.2d 523 (S.D.1980) *aff'd after remand* 334 N.W.2d 856 (S.D.1983); *Oursland v. Oursland*, 83 S.D. 382, 159 N.W.2d 922 (1968); *Wiesner v. Wiesner*, 80 S.D. 114, 119 N.W.2d 920 (1963); *In re Doe*, 52 Haw. 448, 478 P.2d 844 (1970); *Heyer v. Peterson*, 307 N.W.2d 1 (Iowa 1981); *In re Barlow*, 404 Mich. 216, 273 N.W.2d 35 (1978). Generally, it has been stated that in a contest concerning the custody of an illegitimate minor child, the best interests and welfare of the child are matters of chief importance and will prevail over any mere preponderance of a legal right. *Annot., Right of Putative Father to Custody of Illegitimate Child*, 45 A.L. R.3d 216, 220 (1972), *citing In Re Doe, supra; see also Heyer, supra.* Although many jurisdictions recognize that the mother has a superior right to the child's custody over that of the father or any other person, such may not be the case where state statutes provide otherwise. *Id.*

■ SDCL 25–5–10 follows the general rule that mother is initially entitled to the illegitimate child's custody. However, it also clearly provides that in a paternity action the court may award custody of the child *to either parent*, considering the best interests of the child. Additionally, commensurate with SDCL 30–27–23,[2] when child custody is involved, preference is generally given to a parent over a nonparent. *Langerman v. Langerman*, 336 N.W.2d 669 (S.D.1983).

The facts in this case reveal that father commenced an action to establish his paternity and to gain custody approximately fourteen days after Dana was born. Mother admitted the paternity, but denied that father should be given custody. She did not request custody of the child for herself at that time. In fact, during the entire proceedings of the initial action before the trial court (approximately ten months), mother denied that she personally wanted custody of Dana, but rather insisted that he be placed with CFS.

■ In light of the posture of this case, the trial court had no choice but to award custody of the child to father absent a clear showing that he was guilty of gross misconduct or unfitness, or of other extraordinary circumstances affecting the welfare of the child. SDCL 25–5–10; SDCL 30–27–23; *Langerman, supra.*

At the September 19, 1986, trial, mother attempted to demonstrate unfitness of father by showing that he drank beer, visited bars, lived in a small apartment, earned less money than she did, had parents who received welfare and that he did not regularly attend church. However, the trial court, which had received a home study conducted by the Department of Social Services (DSS), found that father was regularly employed as a truck driver (with an expected income of approximately $15,000 in 1986); that his work would take him away from home on occasion, however he had made suitable arrangements to provide for child in his absence; that father had a small one-bedroom apartment which had room for a crib and had adequate space in the living area; that father had demonstrated reasonable housekeeping skills to personnel from DSS; that he had auto/truck mechanic skills as well as a truck driver; that he had some experience in caring for children of tender years, primarily as baby-sitter for his sister's family and for friends; that he had visited with Dana on several occasions during the proceedings and that based upon the observations of the CFS staff social worker, he had demonstrated a reasonable ability to care for Dana; that father had furnished CFS

---

**2.** *See* SDCL 30–27–23, which provides:

Of two persons equally entitled to the custody in other respects, preference is to be given as follows:

(1) To a parent;

(2) To one who was indicated by the wishes of a deceased parent;

(3) To one who already stands in the position of a trustee of a fund to be applied to the child's support;

(4) To a relative.

and its foster home with some clothing and other items for Dana; and that he had indicated a willingness to pay his share of Dana's birth expense and care as well as fees for Dana's guardian ad litem. The trial court determined that father had expressed and demonstrated a sincere desire to exercise the care, custody, and control of Dana as his father and that he strongly objected to his son being placed for adoption by an unknown family. The court concluded that the father was the fit person to have the care, custody and control of Dana; that he had adequate facilities, income, and experience under the circumstances to do so; that the best interests of Dana required his placement with father; and that the placement of Dana with a nonparent was not in the best interests of the child.

We cannot hold that the court was clearly erroneous in finding, under the facts and circumstances of this case, that the mother did not have a superior right to custody over Dana's natural father. SDCL 25-5-10 specifically provides that in an action for paternity, the court *may* award custody to *either* parent upon consideration of the best interests of the child as to its temperal, mental, and moral welfare. In addition, mother has not demonstrated that father was guilty of gross misconduct, unfitness, or any other extraordinary circumstances adversely affecting the welfare of the child. SDCL 30-27-23; *Langerman, supra; Blow v. Lottman*, 75 S.D. 127, 59 N.W.2d 825 (1953). Thus, mother's contention that she has the right to son's custody for the *sole* reason that she is the natural mother is without merit. Nor can we find that the trial court abused its discretion in finding that the best interests of the child were met by placing Dana with the natural father.

## ISSUE II

WHETHER THE TRIAL COURT ERRED IN DENYING MOTHER'S MOTION TO CHANGE CUSTODY OF DANA FROM FATHER TO HER.

Only one day after the court granted custody of Dana to father, mother changed her mind and subsequently filed a motion requesting that the court award her Dana's custody due to a complete change of circumstances. Mother claimed that since she failed in her attempts to provide a two-parent adoptive family home for Dana that she is now trying to do the next best thing for her child, to-wit: to raise the child herself. She asserts that this is a substantial change in circumstances sufficient to justify a change in custody.

The criteria for maintaining an action to change obligations in a paternity action, once a custody order has been entered, is not established in South Dakota. However, it is well settled that in order to maintain an action for change of custody of a minor child when custody was litigated and determined in a divorce proceeding, that the movant be required to show that there has been a substantial and material change in circumstances since the entry of the last custody order and that a change in custody would be in the welfare and best interests of the child. *Mayer v. Mayer*, 397 N.W.2d 638 (S.D.1986); *Flint v. Flint*, 334 N.W.2d 680 (S.D.1983); *Masek v. Masek*, 90 S.D. 1, 237 N.W.2d 432 (S.D.1976); *Hershey v. Hershey*, 85 S.D. 85, 117 N.W.2d 267 (1970).

 We now hold that a change in custody of a minor child based upon an order entered as a result of a paternity action should be governed by the principles and factors, applied and followed, in divorce cases where custody is involved.

 We find under the facts of this case that mother simply did not meet her burden of proving by a preponderance of the evidence that (1) a substantial and material change of circumstances occurred since the custody order was entered and (2) that the welfare and best interest of Dana required modification. Mother's change of mind simply is not a material and substantial change of circumstances. *Mayer, supra; Sneesby v. Davis*, 308 N.W.2d 565 (S.D.1981). Mother knew or should have known from the beginning of the proceedings that placement of custody with father was a possible outcome. Furthermore,

nothing prevented mother, in the paternity proceedings, from pleading in the alternative seeking custody of Dana should the court not approve her adoption preference. Mother had consistently sought to place the child for adoption and appeared to rescind this desire or rather, make her plea for custody only for the purpose of resisting the father's quest to gain custody of his son. As the natural father has continually and consistently sought the custody of Dana and was willing and able to assume full responsibility of parenting him from the beginning, we agree with the trial court that the father should retain custody. *Re Anonymous*, 97 Misc.2d 927, 416 N.Y.S. 2d 729 (1979). The trial court did not abuse its discretion in entering judgment for him. *Mayer, supra; Kolb v. Kolb*, 324 N.W.2d 279 (S.D.1982); *Sneesby, supra.*

## ISSUE III

### WHETHER THE TRIAL COURT ERRED IN DENYING FATHER'S REQUEST FOR ATTORNEY FEES AND COSTS.

Father claims, by notice of review, that the trial court erred in denying his request for attorney fees. Additionally, father has filed a separate motion for attorney fees, taxes and costs incurred by this appeal.

■ SDCL 15–17–7 provides that attorney fees in cases of domestic relations and paternity actions are allowable. Furthermore, we have held in the past that we will not consider a request for attorney fees on appeal in domestic relations cases unless there is submitted a separate motion, accompanied by counsel's verified itemized statement of costs incurred and legal services rendered. *Cole v. Cole*, 384 N.W.2d 312 (S.D.1986); *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). The allowance of attorney fees rests in the sound discretion of the court.

The trial court found that this entire action had been brought and prosecuted by both parties in good faith, and even though it placed a financial burden and obligation upon each of the parties to pay their own respective legal fees, the parties were to be accountable for their own attorney fees.

Father claims, however, that mother's petition for change of custody was based solely upon her "having failed in her attempt to afford her minor child the advantage of being raised in a two-parent family," rather than her earnest and sincere desire to raise her own child. Father claims therefore that the trial court abused its discretion in refusing to allow the father his reasonable attorney fees and costs as requested.

■ We have held in the past that the trial court's duties with regards to attorney fees is two-part. First, it must consider what constitutes reasonable attorney fees and, secondly, it must then make a decision of what portion of such fee, if any, should be allowed as costs and paid by the opposing party in the action. This decision is to be based upon the consideration of the property owned by each party, the relative income of the parties, whether the property of the parties is in liquid or fixed assets, and whether the actions of either party increased unreasonably the time spent on the case. *Prentice v. Prentice*, 322 N.W. 2d 880 (S.D.1982); *Lien v. Lien*, 278 N.W. 2d 436 (S.D.1979).

■ It is unclear whether the trial court applied all the factors enumerated in the above cases in denying father's request for attorney fees. Impliedly, the trial court did consider the income of the parties, as it specifically noted that paying their own attorney fees would be a burden to each. Therefore, the question becomes whether the trial court abused its discretion in denying attorney fees below. We conclude, under the totality of the circumstances, that the trial court did not abuse its discretion. Similarly, we have concluded to deny attorney fees here.

Affirmed.

All the Justices concur.