Scott **HENLE**, Plaintiff and Appellant,

v.

Angela **LARSON**, Defendant and Appellee.

No. 16830.

Supreme Court of South Dakota.

Considered on Briefs April 26, 1990.

Decided March 6, 1991.

Julie L. Irvine, Sioux Falls, for plaintiff and appellant.

Karen Hattervig, Sioux Falls, for defendant and appellee.

SABERS, Justice (on reassignment.)

Scott Henle (father) appeals the trial court's denial of his motion to change custody of his four-year-old son, Eric. We affirm.

## FACTS

Father and Angela Branson (mother) have never been married. They conceived Eric while they were both teenagers in high school. Eric was born on April 18, 1986. After his birth, the parties resided in the home of Eric's paternal grandmother. Father went on to finish high school that spring but mother dropped out of school and did not graduate.

Mother and Eric later moved in with Eric's maternal grandmother. In October 1986, the two moved with father into their own apartment. Father worked and provided the family's financial support while mother remained home and assumed primary responsibility for child care.

As time went on, the parties' relationship deteriorated. In April 1988, mother and Eric moved out of the home and into an apartment with Michelle Reede (Reede). The next month, in lieu of a paternity action, mother and father entered into a stipulation approved by the circuit court concerning paternity, child support and child custody. The stipulation provided that mother would have both legal and physical custody of Eric.

After mother and Eric moved in with Reede, Reede's boyfriend and mother's own boyfriend also moved in. Mother, her boyfriend and Eric lived in Reede's apartment until July 1, 1988, when mother and her boyfriend married. After the marriage, the three moved into their own apartment.

Father commenced the present proceeding to obtain custody of Eric in August 1988. A hearing on father's motion to change custody was conducted in late August and early September. The trial court subsequently entered findings of fact and conclusions of law determining that it would be in Eric's best interests for custody to remain with mother. A judgment was entered accordingly and this appeal followed.

## ISSUE ONE

DID THE TRIAL COURT ABUSE ITS DISCRETION IN DETERMINING THAT ERIC'S BEST INTERESTS REQUIRED A DENIAL OF FATHER'S MOTION TO CHANGE CUSTODY?

Father contends that the trial court abused its discretion in denying his motion to change Eric's custody because of mother's lack of parenting skills and her dishonesty. Normally, "[w]hen custody is not contested in a divorce proceeding, the parent seeking a subsequent change of custody has the burden of proving by a preponderance of the evidence that the best interests and welfare of the children require a change of custody." *Shoop v. Shoop*, 460 N.W.2d 721, 724 (S.D.1990). Here, however, the original custody of Eric was determined through a stipulation in a paterni-

ty proceeding rather than in a divorce proceeding. Nevertheless, we have held that, "a change in custody of a minor child based upon an order entered as a result of a paternity action should be governed by the principles and factors, applied and followed, in divorce cases where custody is involved." *Pribbenow v. Van Sambeek*, 418 N.W.2d 626, 629 (S.D.1988). Thus, because custody was not contested in the paternity proceeding, to achieve a change in custody father had the burden of proving, by a preponderance of the evidence, that Eric's best interests and welfare required the change. *Shoop, supra.* Father was not required to establish a substantial change in circumstances. *Kolb v. Kolb*, 324 N.W.2d 279 (S.D.1982).

■ The trial court has broad discretion in resolving motions for a change in custody and this court will reverse only upon a showing of an abuse of discretion. *Shoop, supra.* An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. *Herndon v. Herndon*, 305 N.W.2d 917 (S.D.1981).

This modification proceeding was heavily contested. Unfortunately, as in *Williams v. Williams*, 425 N.W.2d 390, 391 (S.D. 1988), "the parties concentrated more on demeaning each other's conduct than they did in addressing the real issue, namely the best interests of the [child]." During the hearing, father presented extensive testimony from mother's former roommate, Michelle Reede, and her boyfriend. These witnesses raised a variety of allegations concerning mother's care of Eric during the time they were living with Reede. The allegations generally related to instances in which mother left Eric unattended while she went out late in the evening; mother and her boyfriend's commission of sexual misconduct in Eric's presence; mother's failure to cook properly for Eric or to appropriately discipline him; and, finally,

mother's theft of some laundry from a laundromat. Mother denied much of this conduct and rebutted father's evidence with testimony concerning the filthy conditions in his mother's home where he planned to live with Eric if he should be awarded custody.

The trial court heard all of the testimony pertaining to these matters and entered its findings of fact. Although it recognized that mother had demonstrated a lack of parenting skills in the past, it attributed this problem to her immaturity, the fact that she became pregnant at a young age while still in high school and that she really didn't know how to care for an infant. The trial court also found that her parenting skills problem was curable as she matures and by training and counseling.

The trial court specifically found that mother did not have good parenting skills during the time she and Eric lived with Reede. Nevertheless, it found that Eric had had no serious illnesses or accidents, that mother sincerely loves Eric and that she and Eric have good primary bonding. Although the trial court found that during mother and Eric's stay with Reede, mother had "probably" exposed the child to sexual behavior with her present husband, it entered no findings that this behavior had any demonstrable effect on Eric and we find no record evidence that would support such a finding.[1]

The trial court found that the best thing that has happened to mother is that she has married and has an opportunity to mature and develop stability. It also found that because mother is working at baby-sitting in the home she will be able to spend more time with Eric than father who would have to put Eric in day-care during the day. Additionally, the trial court found that mother and her present husband were expecting a child who would be Eric's half sibling and that, if possible, the two should live together.

1. "[I]mmoral conduct by one parent does not automatically render that parent unfit to have custody of the [child] and require an award of custody to the other parent." *Shoop*, 460 N.W.2d at 724.

[W]here there is no evidence of a demonstrable effect of a parent's [sexual] misconduct upon the child, it does not follow that the parent is an unfit person to have custody and that an award of custody to that parent is not in the best interest and welfare of the child. *Madson v. Madson*, 313 N.W.2d 42, 43–44 (S.D. 1981).

The trial court did find that there was not "much bad" about father. However, it also found that, because he was living with his mother, his future living circumstances were uncertain and it was unknown where he would be in six months or a year. The court also found that although father was apparently willing to sacrifice to have primary custody he had not yet had to do so and, as a result, did not really appreciate the attendant problems. Finally, the trial court found that despite the fact that there were no clearly identifiable problems in transferring custody to father, there was a problem in terms of the effect of a change of custody upon the child.

■ The trial court's findings of fact in a custody modification proceeding shall not be set aside unless they are clearly erroneous. *Yarnall v. Yarnall*, 460 N.W.2d 161 (S.D.1990). Under this standard, we accept that version of the evidence including any reasonable inferences therefrom which are favorable to the trial court's determination. *Id.* Further, the credibility of the witnesses and the weight to be accorded their testimony is a matter for determination by the trial court. *Id.*

■ Applying this standard in the instant case, we cannot state that the above findings of fact are clearly erroneous. Nor can we state, on the basis of these findings, that the trial court abused its discretion in denying father's motion to change custody. The trial court appropriately weighed the past deficiencies in mother's parenting skills with the stability and opportunity to mature provided by her marriage against the uncertainty in father's future and concluded that it would be in Eric's best interests for custody to remain with mother. This represents a reasoned choice between the available alternatives and does not constitute or represent an abuse of discretion.

### ISSUE TWO

DID THE TRIAL COURT ERR IN FAILING TO FIND COMPELLING REASONS TO SEPARATE ERIC FROM HIS FUTURE HALF SIBLING?

■ Father argues that the trial court erred in failing to find compelling reasons

to separate Eric from his future half sibling. Father bases this argument on the fact that, at the time of the hearing on this matter, the child was not yet born and, therefore, there had not been an opportunity for a bond to form between the child and Eric.[2]

It is a matter of settled law that:

"[T]he best interests of siblings require that they be raised together whenever possible." *Mayer v. Mayer*, 397 N.W.2d 638, 642 (S.D.1986). "[T]his principle is in no way diluted by the fact that one child is a half sibling." *Id.* at 644. We have previously recognized and held that the best interests of the child require a showing of compelling reasons before a separation of siblings will be upheld. *Miller v. Miller*, 444 N.W.2d 45 (S.D. 1989); *Adam v. Adam*, 436 N.W.2d 266 (S.D.1989). *"When the trial court concludes that it is [in] the child's best interest to separate siblings*, it must make adequate findings of fact and conclusions of law regarding this crucial consequence of the custody arrangement." *Olson v. Olson*, 438 N.W.2d 544, 546 (S.D.1989)[.]

*Madsen v. Madsen*, 456 N.W.2d 551, 553 (S.D.1990) (emphasis added). In this instance, the trial court found that Eric's best interests were served by continuing custody with mother. Since custody was continued with mother, there would be no separation of siblings and, hence, there was no need for the trial court to enter findings to support separation. Accordingly, we find no reversible error in the trial court's failure to find compelling reasons to separate Eric from his unborn half sibling.

Based on a motion and supporting affidavit in accordance with *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985), we award mother $500 in appellate attorney's fees.

Affirmed.

MILLER, C.J., and MORGAN, Retired Justice, concur.

WUEST and HENDERSON, JJ., dissent.

---

2. The child, Jordan, was born on April 14, 1989.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not having been a member of the court at the time this case was considered, did not participate.

HENDERSON, Justice (dissenting).

In child custody disputes, "[a] parent's moral conduct is a valid consideration in determining parental fitness." *Langerman v. Langerman*, 336 N.W.2d 669, 671 (S.D.1983). Here, mother's stay with Reede exposed the child to not only one but two illicit relationships on an ongoing basis. When Reede's boyfriend and mother's boyfriend moved into Reede's apartment, Eric was required to live with his mother, another young woman and two men to whom the women were not married. Illicit cohabitation is not generally conducive to the temporal, mental and moral welfare of a young child. *See*, SDCL 30–27–19(1). Even so, this Court has held that where there is no evidence of a demonstrable effect of sexual misconduct upon a child, "it does not follow that the parent is an unfit person to have custody and that an award of custody to that parent is not in the best interest and welfare of the child." *Madson v. Madson*, 313 N.W.2d at 43–44. Accord: *Kester v. Kester*, 257 N.W.2d 731 (S.D. 1977). However, this Court has also held that the harmful effect of sexual misconduct in front of a child is, "self evident ... if it is committed in the presence of a child old enough to see and recognize the improprieties." *Madson*, 313 N.W.2d at 44.

In *Madson*, a child observed his mother's sexual indiscretions on two occasions. Even though the child was only two at the time of the first occurrence and four at the time of the second, the child was able to relate the details of the sexual acts to his father. This Court found that fact, in conjunction with the mother's profligate life style, and the undesirable home environment, sufficient to reverse the trial court's finding that the mother was a fit parent to have custody. From the standpoint of mother's conduct, this case is very similar to *Madson*.

Eric, like the child in *Madson*, was only two years old at the time of his mother's sexual indiscretion. Although mother denied the misconduct, the trial court found as a fact that mother had probably exposed the child to sexual behavior with her boyfriend. This is generally indicative of mother's irresponsible and carefree attitude toward the custody and care of Eric. It appears that her conduct was not in the best interests of Eric.

Mother's irresponsible conduct is also demonstrated in the series of incidents in which she left Eric, a two-year-old child, home without proper supervision or no supervision at all. She simply would leave him alone! It is further evinced by her failure to cook or provide nutritious meals for the child and her failure to discipline or properly supervise the boy. She simply would not feed him when he was hungry! The detrimental effect of such child care on a youngster's physical and mental well-being, accompanied by the actual potential for danger to the child, is obvious. "It is the trial court's duty to see that the children are protected at every turn." *Yarnall v. Yarnall*, 460 N.W.2d 161, 164 (S.D. 1990), quoting from *Jasper v. Jasper*, 351 N.W.2d 114, 116 (S.D.1984). As we held in *Spaulding v. Spaulding*, 278 N.W.2d 639, 641 (S.D.1979), where a parent, "by irresponsible conduct, indicates that [his or] her custody would be detrimental to the welfare of the child, custody may be awarded to the [other parent]."

In contrast with mother's irresponsibility, the record reflects that father has been a much more stable individual. He is a good worker, has maintained steady employment since high school and has been diligent in paying his child support obligations and exercising his visitation rights. He shows a keen interest in Eric. Father lives with his own mother in a four bedroom home where Eric would have his own room. Father has planned on how to care for Eric, intending to enroll him in preschool during the day and to be at home with him in the evenings and at night. Father's mother and his sister are also available to provide assistance in caring for the child. The only allegation mother could raise against father was that complaints have been filed against his mother's resi-

dence for accumulation of dog manure in the back yard. However, the record establishes that father or his mother have a kennel area in the yard where they keep two dogs. Two complaints were filed with the city health department in the past several years concerning the dog manure, both of which were corrected in the time allotted. The trial court found, and I agree, that these two incidents are minor considerations in this case, particularly when compared with mother's immoral and irresponsible behavior.

In awarding mother custody, the trial court gave great weight to the fact that she had married, perceiving this to be a stabilizing influence in her life. The trial court also gave deference to mother because father was not married and not living in his own home. However, whatever advantage mother gained from these considerations is severely diminished by the fact that her present husband has been convicted of a series of recent theft offenses. The last of these convictions occurred after the trial court's decision in this matter and resulted in confinement in the county jail. *See, Nauman v. Nauman,* 336 N.W.2d 662 (S.D.1983) (judicial notice may be taken of matters of public or official record, *citing* SDCL 19-10-2-(2)). It is unknown what exact effect this conviction has had on Eric's life, however, it clearly calls into question the trial court's determination that mother could provide the better home and social environment. The stepfather's general conduct cannot be good for the best interests of Eric.

As we have repeatedly held, "[t]he paramount consideration in deciding the issue of child custody is the best interests of the child." *Nauman v. Nauman,* 445 N.W.2d 38 at 39 (S.D.1989). Applying this standard to the instant case, I believe that the trial court clearly abused its discretion in continuing Eric's custody with mother. Mother has repeatedly exhibited an irresponsible and cavalier attitude concerning the care of the child. She has exposed him to not only her own illicit cohabitation with another man but her roommate's as well. She further exposed the child to her sexual relations with her boyfriend, now her husband. On at least three occasions she left the child home late at night or for an extended period of time without so much as confirming the presence of anyone to look after him. She has failed to look after the child's nutritional needs and to exercise the discipline or supervision necessary in raising a young boy. She has made admissions of unlawful conduct involving the theft of property. She is untruthful, lacking candor even in her testimony before the trial court, as demonstrated by the trial court's expression. The trial court found that her lack of honesty may be a serious, long-term problem. In awarding custody of minor children, the trial court must be guided by what appears to be the best interests of the child concerning the child's temporal, mental and moral welfare. SDCL 30-27-19. *Peterson v. Peterson,* 449 N.W.2d 835 (S.D. 1989). It appears that the trial court simply did not address these factors and decided the case on personal feelings. The weight of these factors compels the conclusion that the trial court's custody determination has neither a sound nor a substantial basis in the record and is clearly against reason and evidence. *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981).

I note that the trial court expressed in the record that, in the long run, the child may be better off with the father; further, that there was, "not much bad with the father." Notwithstanding, the trial court reflected (on the record) that he was, "a little bit old-fashioned," and held the belief that under a mother's care, young children are better nourished than under the care of a father. South Dakota statutory authority and precedent are to the absolute contrary. SDCL 30-27-19(2) provides, "[a]s between parents adversely claiming the custody or guardianship, neither parent shall be given preference over the other in determining custody." Our state legislature expressly revoked the "tender years" rule. *See* 1979 S.D.Sess.L. ch. 194. This Court has agreed this was the state legislature's intention. *Prentice v. Prentice,* 322 N.W.2d 880 (S.D.1982); *Martin v. Martin* 306 N.W.2d 648 (S.D.1981). *See also Peterson v. Peterson,* 449 N.W.2d 835 (S.D.

1989). It appears to this author that the trial court was more heavily influenced by his personal convictions than by statute or precedent. His personal conviction infused error, in law, in this case, and has spawned a catastrophic consequence.

Under precedent and the factual scenario of this case, we are obligated to reverse the trial court's custody determination. In reaching this conclusion, we are mindful of our obligation to give deference to the trial court's custody decision because of its first hand opportunity to gauge the credibility of the parties. *Nauman, supra.* However, the trial court's findings of fact must support its conclusion concerning the best interests of the child. *Jasper v. Jasper,* 351 N.W.2d 114 (S.D.1984). In this instance, the trial court's findings concerning mother's lack of candor and her exposure of Eric to sexual misconduct when weighed against its finding that there is nothing wrong with father, simply fail to support its conclusion that it would be in Eric's best interest to continue his custody with mother. A subjective thought that a mother should be given preference—totally against the decisions and statutory law of this state—was wrongfully elevated. A judge cannot bend the law to his will. Accordingly, I conclude that the trial court clearly abused its discretion in its custody determination. *Id.*

Father also argues that the trial court erred in finding that there were no compelling reasons to separate half siblings where one of the siblings was an unborn child. The majority opinion determined that since custody was to be continued with Mother and hence, no separation of siblings, that there was no need for the trial court to enter findings to support separation. I disagree. Given my conclusion to reverse the trial court's award of custody to Mother, I would find it appropriate to remand this matter to the trial court to consider the present bond between Eric and his half brother and what we have called the "crucial consequence" of a custody award that would destroy that bond. *Madsen,* 456 N.W.2d at 553.

## ATTORNEY'S FEES

Both parties have filed motions for appellate attorney's fees. Both motions are accompanied by itemized statements of costs incurred and legal services rendered as required by *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985).

In *Pribbenow, supra,* a custody modification case involving unwed parents, the father filed a motion for attorney fees incurred on appeal. This Court observed that, "SDCL 15–17–7 provides that attorney fees in cases of domestic relations and paternity actions are allowable." *Pribbenow,* 418 N.W.2d at 630. "The allowance of attorney fees rests in the sound discretion of the court." *Id.*

The factors considered in awarding appellate attorney fees in a domestic relations case are: "the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case." *Senger v. Senger,* 308 N.W.2d 395, 398 (S.D.1981). Applying these factors to the present case, we should award no attorney's fees. Mother earns approximately $324 per month babysitting. Father, who regularly pays a $130 per month child support obligation, earns $6 an hour for an income of $150 per week. Mother lives in a rented apartment while father lives with the paternal grandmother. The parties have no fixed or liquid assets. Furthermore, under my theory she is not the prevailing party. Thus, she should not recover attorney's fees. *McGee v. McGee,* 415 N.W.2d 812 (S.D.1987). She is the guilty party and comes into this Court with unclean hands. *Stach v. Stach,* 369 N.W.2d 132 (S.D.1985).

I am authorized to state that WUEST, J., joins this writing.